The first case today is number 23-1351, Sarah Halsey et al. v. Fedcap Rehabilitation Services, Inc. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin? Good morning. My name is Oriana Farnham, counsel for the appellant Sarah Halsey and Susan Corrales-Vernon. May I ask you to hold this up? Yes. May it please the court, Judge Montecalvo, if I could first request reserved two minutes for rebuttal? You may have two minutes. Thank you. The district court decision on appeal holds that Fedcap cannot be sued by ASPIRE participants for civil damages because all their grievances against Fedcap, no matter how big or whether a fair hearing is available, must be channeled through the Department of Health and Human Services' fair hearing process and appeal under the Maine APA. This broad decision bars all civil claims against Fedcap by ASPIRE participants, and it cannot be correct in light of the Maine Tort Claims Act, which specifically carves independent contractors like Fedcap out from the immunities granted to government entities. In other words, the Maine legislature has made the legislative policy decision that government contractors in Maine are subject to civil liability. Sarah and Susan are not here to ask the court to correct a series of small mistakes that Fedcap made over years. They are here to seek redress for the significant harm Fedcap caused by violating its ministerial duties under state law and regulation, its contract and its contract, and negligently and intentionally obstructing Sarah and Susan's access to benefits and opportunities in the ASPIRE program that they had the right to. Counsel, can I ask you a question? I understand that you view this case as being about exhaustion rather than exclusivity.  That's right, Your Honor. So when we took a careful look at what kinds of complaints or claims you could bring to the department, some of the language that we found said that an individual has an opportunity for a fair hearing when they disagree with an action affecting their benefits. I believe that's in the Maine Public Assistance Manual. And so the question I have for you is, under that provision, wouldn't it have been possible for your clients to take at least some of their complaints to the department? And just to give you some examples, for instance, Fedcap's failure to give a disability accommodation to Sarah, why isn't that an action affecting her benefits that she could have challenged in front of the department? So I believe the regulation that you're speaking to says disagree with any decision by the department, including, for example, the reduction, discontinuation, overpayment of benefits. Can you just assume for the purposes of my question, because I'm quoting. I think I have the quote right. Maybe I'm wrong, but just assume for the moment that it actually says disagree with an action affecting their benefits. Could they have brought some of their complaints to the department? No, Your Honor. And in the case of what you brought up, that Sarah requested a reasonable accommodation not to seek employment, and instead, at her doctor's direction, not seek employment because of her substance use recovery. What happened in that case is that Sarah requested a reasonable accommodation. Fedcap had the duty to engage in the interactive process. It didn't do that at all. Instead, the caseworker threatened, if you do not come in and start applying for jobs every single day, we will sanction your benefits. And I understand why that was experienced as great harm by her. But again, my question for you is why wasn't that an action of which she was aware at the time that she, about her benefits, that she could have brought to the department and said, I think this is inappropriate. They should have engaged in the interactive process with me. I think that had Fedcap requested a sanction and sanctioned her benefits, that would have been a decision that she could have appealed. And I think, to my understanding, even if Sarah had asked the department and the department had granted her a fair hearing, it's our position the department was not required to do so. But had it granted her a fair hearing, she couldn't have recovered any of the damages that she experienced from that and redressed her grievance with Fedcap. So if I understand your argument, it comes down to the, there was no requirement of exhaustion despite the language Judge Rickleman just quoted to you. And I can add additional language directly from the regulations that goes to actions or inactions that are not in the regulations. So your bottom line argument then is the remedy through the APA was inadequate because it did not expressly provide for damages, correct? The fact, partly, Your Honor. Okay. So the part that I agree with, Your Honor, is that because the hearing process did not provide damages, that made the remedy inadequate for their grievances under the exhaustion doctrine. The part that I disagree with is that the ASPIRE hearing regulations do not provide the opportunity to request a hearing for inaction. That language comes from Chapter 1 of the Department of Health and Human Services Administrative Hearing Regulations, which only provide that the Division of Administrative Hearings has to provide a hearing, hearings that are required under the regulations. So the ASPIRE regulations are controlling. There are two responses to that. The District Court reasoned that the language of the statute, and as clarified by the regulations, used the term including, and including any judge can tell you about any statute, is not a term of limitation. It is a term that goes beyond the specific examples that are provided. The judge then reasoned that given the broad scope of it and given the policies expressed in the statute and in the regulations and a reference to the very regulation you just quoted, which talks about inaction, that the best reading of in accordance with the main principles of statutory interpretation was that it included your failure to notify a claim. Okay. So I'll give you a minute when I finish my question. But you ignore the same regulation at Chapter 331, which says that the cause of the action for failure to act expressly applies to the TANF program and the people who are involved in the TANF program and the parents as scholars program. It's true the District Court did not go further than it went in its reference to Chapter 1, but we took a look at it and that is what it says. Now, tell me why both of those arguments don't require an affirmance here. So do I understand the first part of your question, Judge, to be why taking all of the regulations together as the District Court did, the appellants were not required to... Excuse me. Your argument seems to be a used and generous argument that this was not a decision, at least as to the failure to notify. The District Court took a look at this and says, no, you're ignoring the term including. Okay. So that alone means used and generous does not apply. Okay. So you can reply to that. Part two is the District Court in its analysis did refer to Chapter 1 of 10-144CMR, but if you keep reading it, that same chapter goes on to say that these specific exhaustion requirements, which apply to inactions, also apply expressly to the TANF and parents as scholars program. Okay. Two parts. Thank you for clarifying, Your Honor. As to part one, it's our position that including must be read in conjunction with the list that follows including. So including decisions... The list is exclusive and the word including is not expansive. I think that including would include other decisions that affect the amount of benefits that somebody is receiving in the TANF program. So because it says including as a suspension, a pause in benefits, a reduction in benefits, the charge of an overpayment of benefits. And then the second part is the allegation of a sanctionable offense. And including, in my mind, cannot be read to include every single thing that FEDCAP does that somebody disagrees with. I'm a legal aid consultant so I know exactly what that is and how it operates. The district court did not say that. The district court honed in, as I believe the court is now doing, on your failure to notify plan. That was the limit of its ruling. So the district court acknowledged that it is true that there is no opportunity for a fair And then the district court looked at the regulations as a whole very broadly to see what did the department intend to do here. And it's our position that the district court erred in conflating the exclusivity and exhaustion doctrine in that inquiry. Excuse me, that's a different argument. You're getting off track. Okay, so let's go back to the fact that the main regulations expressly applied to inactions or failure to act under the TANF program and the Parents as Scholars program. I think I differ with the court's reading of the failure to act language in Chapter 1 because I don't think that it creates the right to a fair hearing. I respect that if there is language providing a fair hearing in any of the department's programs for failure to act, that the Division of Administrative Hearings will respect that right to a fair hearing. Okay, now if I follow the logic of your argument, independently you are saying there is no cause of action for damages available even if exhaustion applies. Okay, then what do you do about rules 80B and C? Is the question about how 80C, about what somebody could do to appeal under 80C? Your opponents have argued that exhaustion of administrative remedies is still required even if you append during the judicial review process an independent cause of action for damages, and that appears to be correct as a matter of main law. So I'm asking you to respond to that, please. Thank you, Your Honor. The district court erred in reading 80C-I, which permits the joinder of independent claims as supporting that the legislature intended the APA to provide the exclusive remedy to aspire participants. 80C-I in other contexts does not require people who have independent claims against the state agency to channel all of those claims through the Administrative Procedure Act. For example, if somebody had a tort claim against the Department of Health and Human Services that was not barred by the main Tort Claims Act, they would not be required to exhaust their administrative remedies and join the tort claim using 80C-I on appeal. They would simply be able to bring that independent claim against the Department of Health and Human Services. So the district court's reading that 80C and 80C-I in particular excludes the possibility of bringing a separate suit, which the appellants have done here, is an incorrect reading with regard to the aspire program. Counsel, are you saying that a party can choose, since the language of that provision is that you can attach an independent action, I guess, as a separate case in state court, or it can choose, if it has some claims that it's brought through the administrative process, it can choose to join them. But it's up to the party. There's no requirement in main law? Is that your argument? Yes, Your Honor. Minster v. Gray is a good example of that. That was a case in which the plaintiffs had a disability discrimination claim against the Secretary of State, the Department of Motor Vehicles, and they were permitted to bring that claim as a separate action without exhausting their administrative remedies with the Department of Motor Vehicles. Do you have any more questions? Thank you. Thank you, counsel. At this time, would counsel for the appellee please come to the podium? Please introduce yourself on the record to begin. Good morning, and may it please the Court. Sarah Grosnickle for Appellee FedCap Rehabilitation Services. So the ultimate question before the Court is who gets to decide in the first instance whether FedCap erred in a day-to-day administration of the AspireTAMP program. Appellants ask this Court to hold that a federal court sitting in diversity can in essence take the place of the Maine Department of Health and Human Services as the primary decision maker regarding whether FedCap properly followed the Department's own rules and Maine law. And the District Court correctly declined to do so because the Maine legislature and the Department created this administrative review process for all of the grievances that appellants allege here and the exclusive process for challenging AspireTAMP's decision in court, and that's the Maine Administrative Procedure Act by way of Rule 80C. Counsel, if I may, isn't the plaintiff's main argument here, primary argument here, that it would have been futile for them to pursue some of their claims at least through the administrative process because they wouldn't be able to get damages? Yes, Your Honor, but the question of whether this process, the APA by way of 80C, is an adequate remedy for them does not turn on whether they can get all of the relief that they request. I understand that, but for some of their claims, for instance, their failure to inform claims, by the time that they learned that they had been not informed about information they needed to have, they allege in their complaint that they had experienced significant damages, they lost the chance to proceed with their education. So at that point, really the claim that they have is for damages. Right, so let's look at the allegations there. Even if they were not able to request the opportunity to enroll in the Parents as Scholars program, because at the time they did not know about that program, what they did know is that at the time the program was not working for them. They either were not getting the support services they needed or there were AspireTAMP's program requirements that were interfering in their ability to succeed in their education program, and at that time that was causing them emotional distress and money damages. So that's the crux of their allegation, and that's that causal link between this failure to inform, which in the abstract doesn't cause damages, and their damages and emotional distress claim. That is the necessary implication from their allegations. The program at that time was not working for them because it was too onerous or they weren't getting what they needed and they couldn't succeed in their education program. And that's what this process is intended to address. So the department's regulations describe case management under the AspireTAMP program as this ongoing interactive process in which the participants and AspireTAMP work together to develop a career plan and the requirements that are to continue participating in the program and the support services that are necessary to meet those career goals. So I understand your argument. I understand exactly what you're saying. So let me just ask you a different question. Do you agree that it was not possible for plaintiffs to obtain damages through the department's administrative process? That's correct, because, well, not directly, anyway, because the result of the administrative review process would be a final agency action that was reviewable in court under the Administrative Procedure Act. The remedies that are available under the Administrative Procedure Act don't include money damages. As I'm sure you know, the court can reverse or remand if it finds that the decision is wrong. The practical result of that might have been that, well, then the participant may get the support services they need, which, you know, kind of an indirect way of possibly getting what they needed. But in terms of money damages, that's not available under the APA. But that doesn't mean that that remedy was inadequate. And you can see that in the case of Colby versus York County commissioners, which involved the, it was a challenge by a deputy sheriff to the process by which he was removed from his position. Among the claims that the plaintiff brought were claims for money damages and punitive damages, just like they are here. And those claims the court dismissed, finding that the plaintiff should have brought a claim under ADB and the Administrative Procedure Act, even though, as we know, those money damages and punitive damages were not available. Given the claims that the plaintiffs make here, what remedies would have been available to them had they participated in the administrative process? So the administrative review process would bring their grievances before the department. And it is, of course, possible that they would have been able to do that if they might have, you know, if they had raised the issue that we're experiencing emotional distress, we can't pay for this process that, you know, too many work hours in addition to our education. Well, at that point, in this interactive process, the department may have said, well, what about getting you into parents as scholars, which might have reduced the number of work hours in addition to education. Well, what about books and supplies? What about these other support services? And so at that time, before, over the course of years, these money damages accumulate, at that time, they would have gotten what they needed. And so that's the kind of remedy. And let's say the department said, no, in fact, we don't think that you get those things, then it would proceed to a fair hearing process. And, again, if the participant disagreed with the ultimate decision from that hearing, they bring that to a claim under the APA. And then the superior court can decide, well, actually, under these program rules, you are entitled to X, Y, and Z. Counsel, may I ask you, do you agree that FEDCAP was required to tell all program participants, including plaintiffs, about the payment? That appears to be the case, yes. So the 2,000 person limit on that duty, you're conceding that at the time of these actions, that restriction had been complied with? Actually, thank you for raising that. I'm not, in the abstract, under the regulations, there appears to be a requirement to inform when, under certain circumstances. We're not conceding at this point, and there is no record in this case as to whether this was required. But we're on a 12 v. 6 motion to dismiss, and that is what the allegations are, and so we have to assume they're true for this purpose. I'm sorry, Judge Lynch, please. The allegations are that there was this 2,000 person limit. There is no allegation that that limit had been complied with. There was no allegation that there was a duty. There was just an allegation that you failed to notify. I'm standing here, I will take your word for it, but standing here, I don't know. Well, take a look. I just want to note one case that demonstrates how this process could have gone. One of the appellant's allegations is that this process shouldn't apply because FedCap is a private entity, it's not the department. You should be able to bring claims against them. I just want to notify the court of the case of Sussman v. Commissioner of the Department of Health and Human Services, which we do cite in our briefing. And that case involved a challenge to decisions made by an entity called Alpha One, which the department, like here, is a private entity in which the department contracted for services. In that case, services relating to Medicaid. And so the challenge in that case was to assessments that Alpha One made relating to a participant's Medicaid disability benefits. And under the analogous case here, at that point, the participant would have sued for money damages, but they didn't do that because they followed the administrative review process. And through that process, ultimately received a final decision of the department that was reviewable under the APA and ADC. So this is not an unprecedented situation. I just want to turn you for just one minute to the arguments under the question of whether you were an independent contractor or an employee. Let's just assume for the moment that you were an employee. The question I have for you is how were at least some of the actions here that are alleged in the complaint that we have to assume are true, as you have forthrightly acknowledged, how were they discretionary? So if that cap were obligated to tell all participants about the parents of scholars program and to allow them to apply, if there were fewer than 2,000 people enrolled, how is it discretionary not to do those things on FEDCAP's part? Because it occurred within the broader context of FEDCAP's administration of these cases. And this interactive process with the participant about what services they should get, what their career goals are. So in that sense, there is no question and they haven't disputed that the general, the FEDCAP's actions in managing their cases and deciding what services they're eligible for in the first instance to recommend to the department requires judgment, requires their expertise in managing these cases. And requires their discretion. But that sounds like an argument that every single action by FEDCAP would be discretionary. Is that what you're really arguing here? No, that's not our argument. But what their ultimate allegations here are is that in the management of their cases, FEDCAP erred. And our contention is that management deciding what benefits they get and what benefits they're not entitled to, that does involve an element of judgment. But wasn't FEDCAP required to tell all program participants about the parents of scholars program? If, as Dr. Lentz noted, there is fewer than 2,000 participants. Then it would have been required to do so. If there are no further questions, thank you for your time. At this time, would counsel for the appellant please reintroduce herself on the record to begin her two-minute rebuttal. My name is Zoriana Farnum, representing the appellants, Sarah Halsey and Susan Corrales-Vernon. To the last point made by opposing counsel, I want to note that it was not within FEDCAP's judgment or discretion whether to inform people about programs and benefits in the ASPIRE program. They were plainly required under their contract with the department and under state law and regulation to inform every participant at orientation and every time they amended their family contract amendment about the full list of support services that were available to them in the ASPIRE program. They did not do so. For example, there are $1,000 available each year to every ASPIRE participant who is in higher education or a training course. They can use that money to buy books and supplies that they need that's designed to support low-income parents who are pursuing higher education who have financial needs. FEDCAP forced Sarah and Susan to face more financial hardship than they needed to in the program. Counsel, you just introduced a wrinkle. Are you saying that independently of this reg with the 2,000 participant limit, there was a separate obligation to inform every applicant of the full list of services? Yes, Your Honor. And where is that? 22MRS3788, subsection 2. Isn't that modified by the 2,000 person limit? No, the receipt of support services, that's a very good question, Your Honor. The receipt of support services for higher education is actually a question that many case managers in the ASPIRE program share. The receipt of support services for education and training is not limited to participants in the Parents as Scholars program. All ASPIRE participants who are pursuing higher education or training, post-secondary training, can access those support services and should be informed of them. That's your more general claim about denial of benefits, right? About failure to inform about available benefits, Your Honor. Okay, thank you. I got it. Thank you, Counsel. That concludes argument in this case.